1  James R. Ballard (178122)
   Sarah Brite Evans (210980)
2  SCHWARTZ SEMERDJIAN BALLARD & CAULEY LLP
   101 West Broadway, Suite 810
3  San Diego, CA 92101

4  Paul J. Stockhausen (pro hac vice application to be submitted)
   Jacob J. Curtis (pro hac vice application to be submitted)
5  REINHART BOERNER VAN DEUREN S.C.
   1000 North Water Street, Suite 1700
6  Milwaukee, WI 53202
   Mailing Address:  P.O. Box 2965
7  Milwaukee, WI 53201-2965

8  Attorneys for Plaintiff
   CONTINUUM SPORTS LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONTINUUM SPORTS LLC, ) | Case No. **'11 CV2580 MMAPOR** |
| Plaintiff, ) | **COMPLAINT FOR VIOLATION OF STATUTORY RIGHT OF PUBLICITY, FALSE ENDORSEMENT AND UNFAIR COMPETITION UNDER LANHAM ACT § 43(a), UNFAIR COMPETITION, AND FALSE ADVERTISING** |
| v. ) | |
| SPEEDPLAY, INC. and DOES 1-5, ) | |
| Defendants. ) | **DEMAND FOR JURY TRIAL** |

Plaintiff Continuum Sports LLC as and for its Complaint against Defendant Speedplay, Inc. ("Speedplay"), alleges as follows:

**THE PARTIES**

1.  Plaintiff Continuum Sports LLC is a limited liability company organized and existing under the laws of the State of California and has a principal place of business located at 1825 Ferdinand Ct., Unit B, Santa Rosa, CA 95404.

2.  On information and belief, Defendant Speedplay is a corporation organized and existing under the laws of the State of California and has a principal place of business located at 10151 Pacific Mesa Blvd. #107, San Diego, CA 92121.

**JURISDICTION AND VENUE**

3.  Jurisdiction with this Court is proper under 28 United States Code section 1331

-1-

(federal question jurisdiction) because the claims arise from Speedplay's violations of the United States Code, including, among others, section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Additionally, this Court has supplemental jurisdiction over Plaintiff's state law claims for Speedplay's wrongful acts pursuant to 28 United States Code section 1367 because the state law claims form part of the same case or controversy.

4.   Upon information and belief, Speedplay is located and does systematic and continuous business in San Diego County, California, and this Court has personal jurisdiction over Speedplay pursuant to California law.

5.   Venue is proper in this District pursuant to 28 United States Code section 1391(b) and Local Rule 16.1 of the United States District Court, Southern District of California.

**GENERAL ALLEGATIONS**

6.   Plaintiff Continuum Sports LLC operates the BMC Racing Team, a successful professional cycling team, competing in Pro Tour events around the world. As a result, Plaintiff Continuum Sports LLC is referred to as "BMC" in all remaining allegations in this Complaint. BMC's team includes twenty-seven professional cyclists, among whom is 2011 Tour de France winner Mr. Cadel Evans.

7.   The majority of the professional cyclists on the BMC team, including Mr. Evans, assign all of their publicity rights to BMC as part of their contracts.

8.   A substantial portion of the revenue generated by BMC results from the exploitation of publicity and related intellectual property rights associated with the notoriety created by the team's participation and success in professional cycling races and other competitions.

9.   Mr. Evans' Tour de France victory dramatically increased the marketplace value for cycling product companies, like Defendant Speedplay, of association with the BMC team and with Mr. Evans as an individual racer.

10.   Recognizing the value to be derived from use of team and individual racer names and images - particularly images related to a racer such as Mr. Evans after the unique success of winning the individual general classification in the 2011 Tour de France - and the association of such names and images with their products, many sponsors pay BMC substantial sums for the right to use such

names and images.

11.     Because this is such a critical area of its value, BMC protects its exclusive rights to publicity and related intellectual property associated with the names, images and endorsements of the team and its individual members.

12.     BMC offers a variety of levels of sponsorship, only certain of which include specifically identified rights of name or image use, and then only at a substantial cost and subject to an executed sponsorship agreement governing the scope of such usage rights.

13.     Defendant Speedplay is a manufacturer of pedals for bicycles such as those used by the BMC team.

14.     Speedplay has been a supplier of products to the BMC team.  As a product supplier, Speedplay provided pedals for use by certain of the racers on the BMC team.  In return for providing pedals, Speedplay was granted the right to advertise itself as the official pedal supplier of the BMC Racing Team.  Speedplay was also granted certain other specific rights, such as the presentation of a Speedplay logo on team vehicles, media guides and websites.

15.     Speedplay's rights as a product supplier for the BMC team expressly excluded rights to exploit team names and images in advertising.

16.     As early as the fall of 2009, and repeatedly thereafter, BMC offered Speedplay the opportunity to purchase a higher level of sponsorship that would include name and image use rights.

17.     Most recently, during the process of soliciting sponsors for the 2011 racing season, BMC offered Speedplay the opportunity to purchase a "Supplier Sponsor" or "Podium Sponsor" level of sponsorship, either of which would have included at least some rights to use team names and images in Speedplay advertising.

18.     Speedplay rejected each offer from BMC to purchase a level of sponsorship that would include any right to use BMC team names and images in Speedplay advertising.

19.     Instead, Speedplay remained only a product supplier and refused to pay any sum to be a BMC team sponsor.

20.     Based on its choice of sponsorship level, Speedplay was not authorized at any time to use any BMC team names or images in connection with Speedplay advertising or other promotional

or marketing materials.

21. On July 24, 2011, Mr. Evans won the individual general classification of the 2011 Tour de France, the highest profile professional cycling event in the world.

22. Mr. Evans' victory made his name and image - particularly in connection with the victory and its associated items, such as the iconic yellow jersey of the Tour de France winner - uniquely valuable in the marketplace for sporting goods generally and cycling products specifically.

23. Shortly after Mr. Evans' Tour de France victory, Speedplay, without authorization, began use of Mr. Evans' name and image and the names and images of the BMC team in connection with promotional and advertising materials and activities.

24. By at least early August 2011, Speedplay displayed on its World Wide Web homepage an image of Mr. Evans in the Tour de France winner's yellow jersey standing upon the victory podium in Paris with arms raised and standing between the second and third place finishers. The homepage included a yellow banner with the words "Speedplay Sweeps Podium at 2011 Tour de France" and a superimposed image of a yellow-accented Speedplay pedal and the words "TDF Special Edition." A true and correct printout of the Speedplay homepage located at http://www.speedplay.com as of early August 2011 is attached hereto as Exhibit A.

25. Speedplay also used and displayed BMC team names and images, including those of Mr. Evans, on other locations throughout its website and in a variety of other cycling industry publications. In each case, these unauthorized uses incorporated or located in connection with prefatory remarks noting the use of Speedplay pedals.

26. Upon discovering Speedplay's unauthorized use and display of BMC team names and images, BMC put Speedplay on notice that the use was unauthorized and that Speedplay must either immediately cease all such unauthorized use or compensate BMC for the name and image use rights that Speedplay desired to exercise.

27. Speedplay refused to pay for the rights it was using.

28. When BMC persisted in its demand that Speedplay cease its unauthorized use of BMC team names and images in connection with Speedplay's advertising and promotional materials and activities, Speedplay agreed, on August 15, 2011, to cease all such use.

29. At the time of its agreement to cease use, Speedplay indicated that the deadline for submitting materials for at least one print advertisement may have already passed such that the add could not be pulled before it ran, but Speedplay agreed that no more ads would be initiated.

30. In spite of BMC's clear assertion of its proprietary rights in the use and display of team names and images for commercial purposes and in spite of Speedplay's agreement to cease unauthorized use, Speedplay continued and renewed its unauthorized uses.

31. Speedplay removed the image of Mr. Evans' from its website, but maintained the remaining usage of names throughout Speedplay's website.

32. Speedplay also continued to run full page adds in industry publications utilizing the podium image of Mr. Evans from the 2011 Tour de France victory. For example, a true and correct copy of Speedplay's full page add in the November issue of ProCycling magazine is attached hereto as Exhibit B.

33. The submission deadline for the November issue of ProCyclying in which Speedplay's full page add appears was over a month after Speedplay's agreement to cease use of BMC team names and images in connection with its advertising - demonstrating that Speedplay knowingly and intentionally used BMC team names and images without authorization even after agreeing not to.

34. Speedplay also continues its misleading and deceptive use of BMC team names in the "News" section of its website. In the "News" section, Speedplay lists under the heading "Speedplay News" the name and team of various race and stage winners. For example, one listing states "10/09/11 GREG VAN AVERMAET (BMC Racing Team) wins Paris-Tour on Speedplay Zeros[.]" The embedded link goes to a duplicate of the "Speedplay News" page but with the referenced item at the top of the page in a grey box stating "GREG VAN AVERMAET (BMC Racing Team)" in bold, followed by the smaller, non-bold text "Greg Van Avermaet wins Paris-Tour on Speedplay Zeros[.]" This text is followed by the text "See More . . ." with an embedded link to a news story regarding Mr. Avermaet's victory that contains no mention of Speedplay.

35. BMC informed Speedplay that all of the uses described herein are unauthorized and demanded that Speedplay cease all use of BMC team names and images in connection with

Speedplay promotional or advertising materials or activities.  Speedplay made no response.

## COUNT I

## VIOLATION OF STATUTORY RIGHT OF PUBLICITY

## UNDER CALIFORNIA CIVIL CODE SECTION 3344

36. BMC re-alleges and incorporates by reference as if fully set forth herein each of the allegations contained in paragraphs 1-35 above.

37. Speedplay's actions, as described herein, violate BMC's statutory right of publicity, as set forth in California Civil Code section 3344, in its team names and images and in the names and images of the individual team members, the rights to which have been assigned to BMC.

38. Speedplay has and continues to knowingly use the name, photograph, or likeness of members of the BMC team, for the purposes of advertising or selling, or soliciting purchases of, its products, merchandise, goods or services, without BMC's prior consent.

39. Speedplay's use as set forth in paragraph 38, above, has caused and continues to cause damage to BMC.

40. Speedplay has obtained profits attributable to its use as set forth in paragraph 38, above, not included in the damage caused to BMC by such use.

41. Speedplay's use as set forth in paragraph 38 above is not authorized or privileged.

42. As a result of Speedplay's actions, BMC is entitled to an award of (1) the damages sustained by BMC as a result of Speedplay's unauthorized use; (2) the profits from the unauthorized use that are attributable to the use and are not taken into account in computing the BMC's damages; (3) punitive damages; (4) BMC's attorney's fees and costs; and (5) an injunction stopping Speedplay's unauthorized use and enjoining any future such use by Speedplay.

## COUNT II

## FALSE ENDORSEMENT AND UNFAIR COMPETITION

## UNDER LANHAM ACT § 43(a), 15 U.S.C. § 1125(a)

43. BMC re-alleges and incorporates by reference as if fully set forth herein each of the allegations contained in paragraphs 1-42 above.

44. The name and visual likeness of BMC cyclists, including but not limited to Mr.

Evans, are readily recognizable and are exclusively owned by BMC. BMC cyclists have consistently used the names, images, likenesses and celebrity identity of its cyclists on various goods, merchandise, and advertising material in commerce, and has received valuable consideration for the use of such names, images, likenesses and celebrity identifications.

45. Speedplay's unauthorized commercial use of BMC team names, images, likenesses and celebrity identity, including but without limitation on the Speedplay website and in advertisements contained within the ProCycling publication, creates a liklihood of confusion in the minds of actual and potential consumers as to the source, association, affiliation, approval or sponsorship of Speedplay's goods, services or commercial activities by the BMC team, and the individual racers on the team, including Mr. Evans.

46. Speedplay's uses are crafted so as to create the false or misleading impression of a level of association, approval or sponsorship that does not exist.

47. Speedplay's use of BMC team names, images, likenesses and celebrity identity is an intentional act designed to associate Speedplay products with the BMC team and its individual racer's celebrity identity, to capitalize thereon, and to suggest authorization, sponsorship, endorsement and/or approval by BMC, in order to profit therefrom.

48. Speedplay's acts as described herein have harmed and, unless stopped, will continue to harm BMC, both financially, and irreparably in damage to its exclusive rights to its goodwill and celebrity identity.

49. By reason of the foregoing, BMC is entitled to an award of (1) the monetary value of damages sustained by BMC as a result of Speedplay's actions; (2) the profits obtained by Speedplay through its actions; (3) punitive damages; (4) BMC's attorney's fees and costs; and (5) an injunction stopping Speedplay's actions and enjoining any future such actions by Speedplay.

## COUNT III

## VIOLATION OF CALIFORNIA STATE LAW

## AGAINST UNFAIR COMPETITION

50. BMC re-alleges and incorporates by reference as if fully set forth herein each of the allegations contained in paragraphs 1-49 above.

51. Speedplay encroached upon the business of BMC by the use of BMC's trademarks, names, and images in a manner so as to cause deception and to mislead the public by creating the false impression that Speedplay's goods are affiliated with and endorsed by the BMC team and its individual cyclists in a manner that is not true.

52. Speedplay misappropriated BMC's intellectual property and exclusive publicity rights without authorization and without paying the license fees charged by BMC for authorization to use team names, likenesses, images or celebrity identities of BMC cyclists to enhance its business venture.  In doing so, Speedplay derived an unfair competitive advantage which results in an actual or likely diminution of competition.

53. Speedplay's actions caused and continue to cause harm to BMC.

54. Speedplay's actions have been and continue to be in violation of California Business & Professions Code section 17200, *et seq*.

55. As a result of Speedplay's wrongful acts, BMC is entitled to an order restoring any interest to BMC which may have been acquired by means of Speedplay's unfair competition and an injunction stopping Speedplay's actions and enjoining any future such actions by Speedplay.

## COUNT IV

## VIOLATION OF CALIFORNIA STATE LAW

## AGAINST FALSE ADVERTISING

56. BMC re-alleges and incorporates by reference as if fully set forth herein each of the allegations contained in paragraphs 1-55 above.

57. Speedplay used and continues to use BMC's trademarks, names, and images in a manner so as to cause deception and to mislead the public by creating the false impression that Speedplay's goods are affiliated with and endorsed by the BMC team and its individual cyclists in a manner that is not true.

58. Speedplay knew or should have known that such advertisements were, and continue to be, untrue or misleading.

59. Speedplay's actions caused and continue to cause harm to BMC.

60. Speedplay's actions are therefore in violation of California Business & Professions

Code section 17500, *et seq*.

61. As a result of Speedplay's wrongful acts, BMC is entitled to an order restoring any interest to BMC which may have been acquired, or damage which has been done to BMC, by means of Speedplay's unlawful acts, and an injunction stopping Speedplay's actions and enjoining any future such actions by Speedplay.

**PRAYER FOR RELIEF**

WHEREFORE, having stated its claims against Defendant Speedplay, Plaintiff BMC respectfully prays that the Court enter a judgment in its favor and against Defendant Speedplay as follows:

A. Finding that Speedplay has infringed on BMC's rights in the publicity, trademark, name, likeness, image and celebrity identity of its team and its individual cyclists, including but not limited to Mr. Evans;

B. Finding that Speedplay's actions are in violation of California Civil Code § 3344;

C. Finding that Speedplay's actions are in violation of 15 U.S.C. § 1125;

D. Finding that Speedplay's actions are unlawful under California Business & Professions Code section 17200;

E. Finding that Speedplay's actions are unlawful under California Business & Professions Code section 17500;

G. Entering a preliminary and permanent injunction enjoining Speedplay, its agents, sales representatives, distributors, servants and employees, attorneys, affiliates, subsidiaries, successors and assigns, and any and all persons or entities acting at, through, under or in active concert or in participation with any or all of them, from making any commercial use whatsoever of the publicity rights, trademarks, trade names, likenesses, images and celebrity identities of the BMC team or its individual cyclists, including but not limited to Mr. Evans;

H. Awarding to BMC, and ordering Speedplay to pay to BMC immediately, the actual damages suffered by BMC as a result of Speedplay's actions in an amount to be determined at trial;

I. Awarding to BMC, and ordering Speedplay to pay to BMC immediately, Speedplay's profits attributable to its actions as set forth herein, in an amount to be determined at trial;

J. Awarding to BMC, and ordering Speedplay to pay to BMC immediately, punitive and exemplary damages against Speedplay in an amount to be proven at trial;

K. Awarding to BMC, and ordering Speedplay to pay to BMC immediately, BMC's actual attorneys' fees and costs incurred in pursuing this action as permitted by law; and

L. Awarding to BMC such other and further relief as this Court shall, in the sound exercise of its discretion, deem just and proper.

Dated: November 4, 2011

SCHWARTZ SEMERDJIAN
BALLARD & CAULEY LLP
*To be designated local counsel for the following attorneys, whose pro hac vice applications will soon be filed:*

    Paul J. Stockhausen (WI State Bar ID No. 1034225)
    Jacob J. Curtis (WI State Bar ID No. 1072735)
    REINHART BOERNER VAN DEUREN S.C.

By __/s Sarah Brite Evans_____
    Sarah Brite Evans
    Attorneys for Continuum Sports, LLC

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: November 4, 2011

SCHWARTZ SEMERDJIAN
BALLARD & CAULEY LLP

By __/s Sarah Brite Evans_____
    Sarah Brite Evans
    Attorneys for Continuum Sports, LLC